[Civ. No. 5189. First Appellate District, Division Two.—June 18, 1925.]

ARISS–KNAPP CO. (a Corporation), Appellant, v. COUNTY OF SONOMA (a Body Politic, etc.), Respondent.

[1] CONTRACTS—MISTAKE AS TO AMOUNT OF WORK—ERROR OF COUNTY ENGINEER—ACTION TO RECOVER IN QUANTUM MERUIT—PLEADING.— In an action by a contractor against a county for the recovery of the reasonable value of work alleged to have been performed in excess of the amount covered by a written contract, upon the theory that in the execution of the contract plaintiff mistook the amount included because of an error of the county engineer in the estimate placed in his notice to bidders, it is essential to show that the mistake was mutual, that the minds of the contracting parties never met, that they agreed upon a certain thing which was to have been embodied in their contract, and that by mistake it was either fraudulently or inadvertently omitted or inadequately expressed.

[2] ID.—RELIANCE UPON MISTAKE—IMPUTED KNOWLEDGE.—In such an action, it is not sufficient merely to show that a mistake was made and that plaintiff relied upon it to his injury, but he must show the reasons why he did not discover the mistake; and if the means of investigation are at hand and knowledge of the mistake could be readily had, such knowledge will be imputed to him—and this is particularly true if the relations of the parties are not fiduciary and where there is no warranty and where the means of knowledge of the truth of the facts are at hand and equally available to both parties.

[3] ID.—RELIANCE UPON MISTAKE OF ENGINEER—FAILURE TO REFER TO PLANS AND SPECIFICATIONS—DISCLOSURE OF DISCREPANCY.—In an action by a contractor against a county for the recovery of the reasonable value of work alleged to have been performed in excess of the amount covered by written contract, the plaintiff cannot rely solely upon the mistake of the county engineer in the estimate of the total yardage which was made in the notice to bidders, where such notice stipulated that the estimates of quantity were merely approximate, and the prospective bidder was not only required to refer to the plans and specifications for the full details and descriptions of the work, but was required to certify that he had carefully examined the plans and read the specifica-

1. See 6 Cal. Jur. 84; 6 R. C. L. 621.

tions and that he had personally satisfied himself as to all the local conditions affecting the work, and reference to the plans and specifications and a simple mathematical calculation would have readily disclosed the correct yardage and the discrepancy in the original estimate of the county engineer.

[4] ID.—MISTAKE AS RESULT OF CARELESSNESS—FAILURE TO USE ORDINARY MEANS OF INFORMATION—EQUITY.—If plaintiff's complaint in such action is one in equity, it is a case for the application of the equitable rules that relief will not be afforded in equity on the ground of mistake where it is the result of pure carelessness and that there will be no relief to one who suffers by not using the ordinary means of information, whether his negligence be attributable to indifference or credulity; and where it is alleged in the complaint that no investigation was made for the purpose of determining the correctness of the estimates as to total yardage, when the very notice upon which plaintiff relies stated definitely that the estimates of yardage therein contained were approximate only and that the prospective bidder was directed and required to examine and refer to the plans and specifications, plaintiff pleads himself out of court so far as any equitable remedy is concerned.

[5] ID.—DEMURRER—CONSTRUCTION OF ABSURD ALLEGATIONS.—Upon the consideration of a demurrer to a complaint it is difficult to follow the rule that the court must assume all the allegations of the complaint to be true, when such allegations are palpably absurd and contrary to all common knowledge and experience.

[6] ID.—WRITTEN CONTRACT—PREVAILING CUSTOM—PAROL EVIDENCE.— In an action by a contractor against a county for the recovery of the reasonable value of work alleged to have been performed in excess of the amount covered by written contract, where there is no uncertainty in the terms of such written contract plaintiff's case is not strengthened by the amendment of the complaint to set up an issue of a prevailing custom on the part of contractors to rely upon the estimates made by the engineers and appearing in their notice to the public.

---

(1) 34 Cyc., p. 909, n. 43, p. 910, n. 47, p. 915, n. 86, p. 919, n. 95. (2) 34 Cyc., p. 949, n. 59 New.   (3) 29 C. J., p. 610, n. 18.   (4) 21 C. J., p. 89, n. 58, p. 90, n. 60, 61.   (5) 17 C. J., p. 518, n. 8.   (6) 17 C. J., p. 508, n. 46.

5.   See 21 Cal. Jur. 96; 21 R. C. L. 509.
6.   See 25 Cal. Jur. 426; 27 R. C. L. 172.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Frank J. Murasky, Judge. Affirmed.

The facts are stated in the opinion of the court.

R. M. F. Soto for Appellant.

G. W. Hoyle, District Attorney, for Respondent.

NOURSE, J.—This is an action brought to recover the sum of $5,460 for work done in graveling a county road under a written contract executed with the County of Sonoma under the provisions of section 2643 of the Political Code. . The action is termed a suit in equity, though in fact it is nothing more than an action at law to recover the reasonable value of work which by reason of an alleged mistake was not included within the terms of the written contract. A demurrer to the complaint was sustained, amendments were filed and a demurrer thereto sustained. Amendments were again filed and a demurrer thereto was sustained without leave to amend. Judgment followed in favor of the defendant, from which plaintiff appeals upon a record prepared under section 953a, Code of Civil Procedure.

The facts of the case as disclosed in the complaint are that in May, 1920, the board of supervisors of the County of Sonoma duly instituted proceedings for the graveling and improving of a certain road within the county, acting under the provisions of section 2643 of the Political Code, as amended in 1919 (Stats. 1919, p. 167), which section was repealed in 1921. In the course of these proceedings notice inviting proposals for the work was duly given, and in response thereto the plaintiff's proposal was accepted, and on the 23d of June, 1920, a contract for the doing of the work was duly executed between the plaintiff and the County. In the notice inviting proposals the estimated yardage of surfacing gravel was given as 3,050 cubic yards and the estimated cost thereof was given as $8,387.50. In the same notice the length of the highway was given as 16,680 feet. In response to this invitation the plaintiff submitted a bid for the surface graveling of $9,150 and executed the contract upon the same terms, the exact language of the bid and

contract reading as follows: "For *Gravel Road,* in place complete as per attached plans and specifications, the lump sum of Ninety-one Hundred and Fifty Dollars ($9,150.00) for the entire length of road embraced in the said plans and specifications." On December 31, 1920, all the work had been done under the contract except some of the graveling. At that time the plaintiff had laid 1,995 cubic yards of gravel; between that date and May 21, 1921, the plaintiff laid 2,875 cubic yards of gravel, making an aggregate laid by plaintiff of 4,870 cubic yards instead of the estimated quantity of 3,050 cubic yards, an excess of 1,820 cubic yards. Up to the time of December 31, 1920, estimates had been made by the county engineer upon the basis of which payments were made to the plaintiff as the work progressed. It is claimed by plaintiff that these estimates were made upon the basis of three dollars per cubic yard, calculated upon the engineer's estimate of 3,050 cubic yards. The dispute arose over the estimate made for the work done from December 31, 1920, until May 31, 1921, and the plaintiff made written protest and claimed before the board of supervisors and the county engineer that this work should have been estimated on the basis of three dollars per cubic yard. After the work was completed and on the eighth day of June, 1921, the plaintiff for the first time raised the claim that more work had been done than that noted in the original estimate, and thereupon made demand for payment for this excess work on the basis of three dollars per cubic yard.

[1] The whole case of the plaintiff thus becomes an action for the recovery of the reasonable value of work alleged to have been performed in excess of the amount covered by the written contract upon the theory that in the execution of the contract the plaintiff mistook the amount included in the error of the county engineer in the estimate placed in his notice to bidders. It is essential to show in an action of this kind based upon an alleged mistake on the part of the respondent that the mistake was mutual; that the minds of the contracting parties met; that they agreed upon a certain thing which was to have been embodied in their contract, and that by a mistake it was either fraudulently or inadvertently omitted or inadequately expressed. (*Harding* v. *Robinson,* 175 Cal. 534, 541 [166 Pac. 808].)

[2]    It is not sufficient merely to show that a mistake was made and that the party relied upon it to his injury, but he must show the reasons why he did not discover the mistake.    If the means of investigation are at hand and knowledge of the mistake could be readily had, such knowledge will be imputed to him.    This is particularly true if the relations of the parties are not fiduciary and where there is no warranty and where the means of knowledge of the truth of the facts are at hand and equally available to both parties.

[3]    In the case before us the appellant relies solely upon the mistake in the estimate of the total yardage which was made in the notice to bidders.    It is pointed out by the respondent that in this notice the County particularly stipulated that the estimates of quantity were merely approximate and the prospective bidder was not only directed to refer to the plans and specifications for the full details and descriptions of the work to be done, but was required to certify that he had carefully examined the plans and read the specifications and that he had personally satisfied himself as to all the local conditions affecting the work.    The respondent points out that reference to the plans and specifications would have readily disclosed the discrepancy in the original estimate of the county engineer, and also that the number of lineal feet mentioned in the notice to bidders was in itself sufficient notice to the prospective bidder as a simple multiplication of the length of the highway thus given, 16,680 feet by 16 feet, the width of the portion to be graveled, by one-half foot, the depth of the gravel, would have given a total of 133,440 cubic feet or 4,942 cubic yards. It is also pointed out that in the contract which was executed by the parties the appellant obligated itself to lay the gravel road ''as per *attached* plans and specifications . . . for the entire length of road embraced in the said plans and specifications.''    It is to be noted that the appellant's bid and the contract called for the doing of this work for the lump sum of $9,150, no mention being made in either the bid or contract of the amount to be paid per yard, whereas the other portions of the contract were on the basis of unit prices.    We have then the allegation that the appellant, in making its bid for the work, relied upon

the estimates made therefor, as stated in the notice, "and did not investigate to ascertain whether said estimates were or whether any one thereof was correct or not," because it believed that the county engineer was a reputable engineer and because the county board of supervisors had approved the estimates.

In regard to this allegation, we are confronted with the written contract of the parties, executed before the work was commenced, in which the appellant covenanted to perform the work in accordance with the plans and specifications which in turn it declared it had seen and examined. The contract is included in the complaint *in haec verba* and presents a sharp conflict between the written obligations of the appellant made at the beginning of the transaction and the allegations prepared for the purpose of enforcing a claim for extra work. At the most the complaint demonstrates that the appellant failed to investigate where an investigation would have disclosed the mistake upon which it now relies. [4] If its action is one in equity, as it claims it to be, then it is a case for the application of the well-known equitable rule that relief will not be afforded in equity on the ground of mistake where it is the result of pure carelessness and that there will be no relief to one who suffers by not using the ordinary means of information, whether his negligence be attributable to indifference or credulity. In making the allegation that no investigation was made for the purpose of determining the correctness of the estimates as to total yardage when the very notice upon which the appellant relies stated definitely that the estimates of yardage therein contained were approximate only and that the prospective bidder was directed and required to examine and refer to the plans and specifications, the pleader has pleaded himself out of court so far as any equitable remedy is concerned.

In the amendment to the complaint the appellant set up the claim that it was relying upon a custom of contractors engaged in doing public work in the state of California to the effect that they relied upon the estimates made by the engineers appearing in their notice to the public and that such contractors would not make any independent or preliminary investigation to ascertain whether such estimates were correct. [5] It is difficult to follow the rule that upon the

consideration of a demurrer to a complaint we must assume all the allegations to the complaint to be true when such allegations are palpably absurd and contrary to all common knowledge and experience. [6] But in this case the allegation is nothing more than an attempt to set up an issue of a prevailing custom as modifying the express terms of a written contract. To prove the issue it would be necessary to rely upon parol evidence in a case where there is no uncertainty in the terms of the written contract and such evidence would be inadmissible. (*Withers* v. *Moore,* 140 Cal. 591, 597 [74 Pac. 159].) The amendment to the complaint merely injected an issue which could not be proved. It would not strengthen the case which the appellant attempted to plead.

Judgment affirmed.

Sturtevant, J., and Langdon, P. J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 17, 1925.

All the Justices present concurred.