[Civ. No. 18633. Second Dist., Div. Two. June 24, 1952.]

LOUIS WISHNICK, Respondent, v. BEN FRYE et al., Defendants; JOSEPH NEWMARK, Appellant.

William C. Stein and William H. Levit for Appellant.

Milton Wichner and H. H. Cholodenko for Respondent.

FOX, J.—Plaintiff brought an action to recover damages for fraud and deceit against defendants Frye, Newmark and the Frye-Newmark Paper Company. From a judgment in favor of plaintiff for $14,180 defendant Newmark alone appeals.

The testimony discloses that plaintiff, a retired jeweler 61 years of age, advised his attorney, Mr. Mosk, that he desired to invest in a business that would provide him with both an income and employment suitable to his physical condition. Shortly thereafter Mr. Mosk introduced plaintiff to defendant Frye and appellant Newmark, who were the controlling directors, officers, and majority stockholders in the Frye-Newmark Paper Company, a corporation engaged in the business of paper jobbing. Frye and Newmark were interested in obtaining capital to undertake the manufacture of paper boxes, which would insure them a constant supply for their jobbing business. Negotiations were commenced with the owners and operators of a small paper box manufacturing company, a Mr. Barron and a Mr. Hirshon, as the result of which plaintiff, defendants Frye and Newmark, and Mr. Barron and Mr. Hirshon agreed to become associated in the organization of a corporation known as the State Container Corporation, its business purpose being the manufacture of paper boxes. During the preliminary negotiations, which eventuated in the formation of the State Con-

tainer Corporation, plaintiff was represented by his attorney, Mr. Mosk, in all the significant phases of the transaction. Defendant Frye was authorized by appellant Newmark to act as his agent in arranging the deal.

The essence of the written agreement which was finally signed by the parties on January 11, 1949, provided that plaintiff was to invest $20,000 for "the establishment and initial operation of the State Container Corporation," of which $14,000 was a loan to the corporation and $6,000 was for the purchase of the stock allocated to plaintiff and defendants. Plaintiff was to get one-third of the stock issued, one-third was to go to Barron and Hirshon, and the remaining third to Frye, Newmark and Mr. B. Weiner, an officer of the Frye-Newmark Paper Company. The assets of the small company belonging to Barron and Hirshon were to be transferred to the new corporation, which Barron and Hirshon would manage and of which plaintiff would be an employee at a salary of $100 per week. It was agreed that Frye-Newmark Company would channel to the State Container Corporation substantially all of its business that fell within the plant capacity and price range of the new corporation.

It was understood that the new corporation would have to be equipped with a substantial amount of machinery, which it was originally estimated would cost between $9,000 and $12,000, to be purchased with the money provided by plaintiff. He was concerned about the need for operating capital to enable the new plant to produce its product, but he was assured by defendant Frye that the equipment, which Barron was to purchase in the east, would be financed, so that sufficient operating capital would be available out of plaintiff's investment. Frye also advised plaintiff that if the machinery could not be financed at the place of purchase it would be financed by a local bank or, if need be, by a cousin of his in the factoring business. Barron eventually found that he was obligated to pay cash for the machinery, which cost between $13,000 and $15,000, including crating and freight charges to Los Angeles. This equipment was placed in operation in March, 1949, but from the outset the State Container Corporation found itself unable to fill or accept all the orders placed with it because of insufficient working capital. Meanwhile, the Frye-Newmark Paper Company suffered financial difficulties in April, 1949, and made a formal assignment for the benefit of creditors on June 2, 1949, at which time

it was indebted to the State Container Corporation for between $3,267 and $3,865. The operations of the State Container Corporation continued until June 1, 1949, when it discontinued business because of a lack of operating capital; it made an assignment for the benefit of creditors on July 21, 1949. Plaintiff filed a claim amounting to the sum he had invested with the assignee of the State Container Corporation and received a dividend of $2,820. The judgment in the sum of $14,180 comprises the $20,000 invested by plaintiff less the dividend noted, less the $3,000 paid for the purchase of plaintiff's share of the stock.

In bringing this action for damages caused by defendants' deceit, plaintiff alleged that he had been induced to invest his $20,000 in the paper box venture because of a series of fraudulent misrepresentations knowingly made by defendants with intent to deceive. Among such representations are the following: (1) the Frye-Newmark Paper Company was in a sound financial condition, with a sufficient backlog of orders for paper boxes to keep the State Container Corporation operating at capacity for one year with this business; (2) Frye-Newmark had enough orders on hand for the State Container Corporation to enable it to repay plaintiff's proposed loan in less than a year; (3) defendants Frye and Newmark controlled most of the paper box requirements of the local garment industry, which amounted to a volume sufficient to keep the new corporation's plant working at full capacity; (4) defendant Frye had a commitment from Ohrbach's to supply all their local requirements for paper boxes; (5) defendants Frye and Newmark would deliver to plaintiff a written guarantee against any loss up to $10,000. In its treatment of the representations hereinbefore enumerated, the court found that virtually all of them were false, but refused to predicate liability thereon because of its various findings that as to certain of the representations there was no justifiable reliance on plaintiff's part, as to another that it was a mere expression of opinion, and as to the remainder that they were not the proximate cause of any damage to plaintiff.

Judgment for plaintiff is based upon his allegation that defendant Frye falsely, knowingly and with intent to deceive, represented to him that the $20,000 which plaintiff was to invest was sufficient both to purchase machinery for the new corporation and provide the enterprise with ade-

quate working capital and that Frye had arranged for a loan secured by the machinery in the event that the equipment required cash payment. As to this allegation the trial court found that "the representation made by the Defendants to the Plaintiff that in the event State Container Corporation was unable to purchase machinery and equipment upon terms of 25% down, that the defendants would be able to secure a loan upon said machinery equal to 75% of its purchase price was made as a representation of fact, that it was untrue, that it was relied upon by the Plaintiff, and that the Plaintiff would not have made the advances hereinafter found to have been made had he known that said representation was untrue. The Court further finds that the inability of the Defendants to procure said loan was a proximate cause of the loss suffered by the plaintiff as hereinafter found." The trial court also made the omnibus finding "that except as hereinbefore expressly found to be true, all the allegations of the complaint on file herein are untrue."

Of the several points urged by appellant in attacking the judgment, we believe that a consideration of his argument that the judgment cannot be sustained in view of the absence of a finding of scienter suffices to dispose of this appeal.

The elements of actionable fraud, which must be pleaded and proved if a plaintiff is to prevail, consist of a false representation of a material fact, made with knowledge of its falsity and with the intent to induce reliance thereon, upon which plaintiff justifiably relies to his injury. (*Blackman* v. *Howes*, 82 Cal.App.2d 275 [185 P.2d 1019, 174 A.L.R. 1004]; *Podlasky* v. *Price*, 87 Cal.App.2d 151, 158 [196 P.2d 608].) The omission of a single one of these elements in an action for deceit will normaly prevent recovery. (*Gonsalves* v. *Hodgson*, 38 Cal.2d 91 at p. 100 [237 P.2d 656]; *Cox* v. *Westling*, 96 Cal.App.2d 225, 229 [215 P.2d 52].)

In order to satisfy the requirement of scienter, it may be established either that defendant had actual knowledge of the untruth of his statements, or that he lacked an honest belief in their truth, or that the statements were carelessly and recklessly made, in a manner not warranted by the information available to defendant. (*Gonsalves* v. *Hodgson, supra*; 12 Cal.Jur. 724-725; Restatement of Torts, § 526.) In whatever fashion scienter or knowledge on the part of the defendant is adduced from the evidence, it constitutes a vital element of plaintiff's cause of action, and must affirmatively appear in the findings to support a judgment for

fraud. (*Hoffman* v. *Kirby*, 136 Cal. 26, 29 [68 P. 321]; *Harding* v. *Robinson*, 175 Cal. 534, 539 [166 P. 808]; *Hall* v. *Mitchell*, 59 Cal.App. 743, 748 [211 P. 853]. See, also, *Boas* v. *Bank of America*, 51 Cal.App.2d 592, 599 [125 P.2d 620].)

In applying these rules to the finding which we have quoted, it becomes apparent that it is fatally deficient in its omission to find that defendant made the representation on which the judgment is founded either with knowledge of its falsity, or without a reasonable belief in its truth, or in a manner not warranted by the facts used as a basis for his statements. Although under certain circumstances one of the elements of fraud may be implied from certain other specific findings, as where the law may supply the intent to deceive from the fact that one has knowingly made false representations (*Boas* v. *Bank of America, supra*, p. 598) or where the materiality of a representation may be implied from the circumstances of plaintiff's reliance thereon (*Springer* v. *Angeles Credit Co.*, 44 Cal.App.2d 712 [113 P.2d 7]), the mere finding that a representation of fact is false without a finding of the presence of the requisite element of scienter cannot sustain the conclusion of fraud in an action for damages based on deceit. (*Hoffman* v. *Kirby, supra*; *Williams* v. *Spazier*, 134 Cal.App. 340, 345-348 [25 P.2d 851], citing Civil Code §§ 1709, 1710.)

Plaintiff earnestly argues that scienter is an "inconvenient requirement" which has been dispensed with in eight American jurisdictions as an element of actionable fraud. However, this view is supported only by a minority of jurisdictions, while the courts of this state continue to adhere to the majority rule. (See 37 C.J.S. 265.) Plaintiff cites a number of California decisions which he asserts show a tendency to depart from the rule requiring scienter. An analysis of these cases discloses that they do not support plaintiff's contention. A group of these cases involves rescission of land sales contracts by a vendee who was induced to purchase because of representations made by the vendor which were not warranted by the information available to him (*Scott* v. *Delta Land & W. Co.*, 57 Cal.App. 320 [207 P. 389]; *Muller* v. *Palmer*, 144 Cal. 305 [77 P. 954]; *Edwards* v. *Sergi*, 137 Cal.App. 369 [30 P.2d 541]), or where rescission was granted the vendee on the theory that a vendor of land is presumed to know his own boundaries. (*Lombardi* v. *Sinanides*, 71 Cal. App. 272 [235 P. 455]; *Del Grande* v. *Castelhun*, 56 Cal.App.

366 [205 P. 18].) In all of these cases the findings fully supported the complaint of fraud. Plaintiff refers us to only two cases involving deceit actions, but neither is authority for his position. In *Gaffney* v. *Graf*, 73 Cal.App. 622 [238 P. 1054], the court found that defendant's positive statements of fact to a purchaser were made without sufficient information on which to base a reasonable belief in their truth. In *MacDonald* v. *de Fremery*, 168 Cal. 189 [142 P. 73], a judgment in a deceit action in favor of defendants was reversed, partly for the reason that the evidence revealed that defendants must have known of the falsity of their statements.

Although the judgment must be reversed because of the absence of a finding of scienter, we do not agree with defendant's contention that the court's omnibus finding "that except as hereinbefore expressly found to be true, all the allegations of the complaint on file herein are untrue" is an affirmative finding that there was no scienter. This finding relates back to plaintiff's allegations "that defendant Ben Frye *had arranged* a loan secured by the machinery and equipment to be purchased in the event that such purchase required a cash payment" and that "the said representations . . . were false and were known to defendants to be false when made, and were made with the intent to deceive plaintiff." Since the court found Frye's representation to have been that "in the event State Container Corporation was unable to purchase machinery and equipment upon terms of 25% down, that the Defendants *would be able* to secure a loan upon said machinery equal to 75% of its purchase price," it is clear that the omnibus clause was not meant to apply to this modified representation, especially where it would have had the immediate effect of destroying the validity of the judgment. (Italics added.)

The judgment is reversed.

Moore, P. J., and McComb, J., concurred.

A petition for a rehearing was denied July 14, 1952.