George Wesley STONE and Hildegarde Stone, Appellants,

v.

Jack W. S. FARNELL, and Elisabeth Patee Farnell, Appellees.

No. 15024.

United States Court of Appeals Ninth Circuit.

Dec. 7, 1956.

Rehearing Denied Jan. 23, 1957.

**752**

Leo Shapiro, Beverly Hills, Cal., for appellants.

Albert Lee Stephens, Jr., Los Angeles, Cal., for appellees.

Before BARNES and HAMLEY, Circuit Judges, and ROSS, District Judge.

BARNES, Circuit Judge.

This is an appeal from a judgment entered for plaintiffs in an action based on fraud in the sale of residential real property. The District Court, sitting without a jury, awarded plaintiffs $15,000 in damages, ordered the cancellation of a second deed of trust on the property, and denied the defendants recovery on their counterclaim for "foreclosure, as a mortgage, of said deed of trust." Jurisdiction is grounded on diversity of citizenship, 28 U.S.C.A. § 1332(a).

This litigation arose out of the sale by appellants, Mr. and Mrs. Stone (herein sometimes called vendors), to appellees, Mr. and Mrs. Farnell (herein sometimes called vendees), of improved real property located on Mulholland Drive in Beverly Hills, California, in December, 1953. The agreed consideration was $38,000, $6,500 of which was paid in cash, with the Farnells assigning a third party's note in the face amount of $5,250, and executing their own promissory notes in the sum of $15,083.64 and $11,166.36 (secured by first and second trust deeds, respectively), for the remainder. This property consisted of a main residence, guest house, carport, cesspool and septic tank, swimming pool, walks, driveway, landscaping and other appurtenances. About eight months after the purchase, following a survey, the Farnells learned that approximately one-third of the main residence, the carport, the guest house, the cesspool and septic tank, and portions of the walks, driveways and landscaping and other improvements were not on the property purchased from the Stones, but were situated on property owned by the City of Los Angeles, being a part of Mulholland Drive.

The District Court found that the vendors had represented that the improvements were located on the property sold to the vendees and that the total value of such property was $38,000; that such representations were false; that the vendees relied on them in buying the property, and would not have purchased it had they known the true facts; and that the damages incurred by the vendees were a direct and proximate result of the representations made by the appellants. From the foregoing facts, the court concluded that in making the sale of the property, the appellants had committed both actual and constructive fraud under California law. Cal.Civ.Code, §§ 1572, subd. 2, 1573, subd. 1.

Section 1572, subd. 2, defines actual fraud as including:

> "The positive assertion, in a manner not warranted by the information of the person making it, of that

which is not true, though he believes it to be true."

Section 1573, subd. 1, provides in substance that constructive fraud is committed by

" * * * any breach of duty which, without an actually fraudulent intent, gains an advantage to the person in fault * * * by misleading another to his prejudice."

Appellants challenge the sufficiency of the findings and the evidence on both the issues of fraud and damages. They also assert that the denial of their counterclaim was error and that this Court should enter judgment for them thereon.

The Supreme Court of California has stated that to establish a cause of action for fraud or deceit the plaintiff must prove that a material misrepresentation was made; that it was false; that defendants knew it to be untrue or did not have sufficient knowledge to warrant a belief that it was true; that it was made with an intent to induce plaintiff to act in reliance thereon; that the plaintiff reasonably believed it to be true; that it was relied on by the plaintiff; and that the plaintiff suffered damage thereby. Hobart v. Hobart Estate Co., 1945, 26 Cal.2d 412, 159 P.2d 958; see also, Nathanson v. Murphy, 1955, 132 Cal. App.2d 363, 282 P.2d 174.

The alleged representations in the instant case concern the area and boundaries of the property conveyed. It is well settled in California that such representations are deemed material representations of fact. De Bairos v. Barlin, 1920, 46 Cal.App. 665, 190 P. 188; Nathanson v. Murphy, supra; Richard v. Baker, Cal.App., 1956, 297 P.2d 674. The only written representation, if any was made, was by means of a map, which we will later discuss. There is a conflict in the evidence as to what oral representations, if any, were made by the Stones. Viewing the testimony in the light most favorable to appellees, as we must, Worchester Felt Pad Corp. v. Tucson Airport Authority, 9 Cir., 233 F.2d 44, the evidence shows that Mrs. Stone, one of

the vendors, made the specific statement to the Farnells that all the improvements were located on the property. She pointed out to them the purported location of the south boundary, stating erroneously, "it runs right along here, south of the guest house and south of the carport." [Tr. p. 115] As Richard v. Baker, supra, indicates, a single material misrepresentation suffices to establish this element of the cause of action. However, the District judge also found that appellants had falsely represented the value of the property, an almost necessary concomitant of their expressions as to the boundaries, if such boundaries were substantially incorrect. The California courts have long wrestled with the troublesome question of whether a misrepresentation of value is actionable. A ruling on this point is not necessary to our decision, but it appears that the trend of the California law is toward liability, especially where the misstatement of value is accompanied by other misrepresentations. Yeoman v. Sherry, 1935, 10 Cal.App.2d 567, 52 P. 2d 555; Hobart v. Hobart Estate Co., supra.

In regard to the intent element, the California Supreme Court, in Gagne v. Bertran, 1954, 43 Cal.2d 481, 488, 275 P.2d 15, 20, stated that "* * * the intent required to prove a cause of action for deceit is an intent to induce action. An 'intent to deceive' is not an essential element of the cause of action * * *." The intent to induce action here is not in dispute. The evidence clearly demonstrated that the representations were designed to persuade the Farnells to buy the property.

Thus, the two major elements of fraud in controversy relate to the appellants' knowledge, or lack thereof, of the falsity of the misrepresentations, and to the reasonableness of appellees' reliance thereon. As to the first element, appellants vigorously contend that despite the statutory language a finding of scienter is essential in this action, and that in the absence of such a finding by the trial judge, this Court is com-

pelled to reverse the judgment. They place much reliance on Wishnick v. Frye, 1952, 111 Cal.App.2d 926, 245 P.2d 532, which involved an action for fraud and deceit. That decision supports appellants' position. However, the Wishnick decision is not the law of California. That case was decided by a division of the District Court of Appeal in 1952. As a direct consequence of Wishnick v. Frye, supra, and other like decisions which cast doubt on the literal construction of the statute, the Supreme Court, in 1954, in Gagne v. Bertran, supra, determined to resolve this uncertainty. Mr. Justice Traynor, writing for the Court, stated at page 20 of 275 P.2d (note 4),

> "Since the Legislature in this section of the Civil Code has made the cause of action for negligent misrepresentation a form of deceit, statements in a number of cases, contrary to this section and the cases cited in the text, that scienter is an essential element of every cause of action for deceit are erroneous and are therefore disapproved."

Wishnick v. Frye, supra, was one of the cases cited in the text. Moreover, it appears probable that this has been the law in California, according to Supreme Court dicta, for a quarter of a century. Washington Lumber and Millwork Co. v. McGuire, 1931, 213 Cal. 13, 1 P.2d 437.[1]

One problem remains. In the Gagne case, Mr. Justice Traynor referred only to California Civil Code, § 1710, defining deceit.[2] Subsequent decisions have cited it in relation to that section. Nathanson v. Murphy, supra; Richard v. Baker, supra. The question thus presented is whether the language in Gagne, supra, has equal applicability to sections 1572, subd. 2, and 1573, subd. 1, of the California Civil Code, defining fraud, in view of the similar wording of all three provisions. It appears that the California courts have not attempted to differentiate between fraud and deceit in this respect. In Walker v. Department of Public Works, 1930, 108 Cal. App. 508, 291 P. 907, wherein no fraud was found to exist, the court cited sections 1572, subd. 2, and 1710 together and made no endeavor to distinguish between the two. Hayter v. Fulmor, 1949, 92 Cal.App.2d 392, 206 P.2d 1101, 1105, states that constructive fraud under section 1573, subd. 1, can be grounded on negligent or careless misrepresentations. Wishnick v. Frye, supra, itself provides a vivid illustration of how the courts use the words fraud and deceit interchangeably, thereby strongly indicating that they have been equated. We therefore conclude that the language of the Gagne case, supra, applies with the same force and effect to California Civil Code Sections 1572, subd. 2, and 1573, subd. 1, as it does to § 1710. There being no necessity for a finding of scienter, the want of such finding is not error.

Altho scienter is not required, it is plain that a finding, and evidence, of negligence is essential. In Williams v. Spazier, 1933, 134 Cal.App. 340, 25 P.2d 851, the Supreme Court reversed a judgment because of the absence of a finding on the reasonableness of the defendant's belief. Rule 52 of the Rules of Civil Procedure, 28 U.S.C.A., which governs this action, has been construed to require a finding on every material issue. The District judge did not comply with this salutory rule. The record is devoid of any finding of fact that the vendors were negligent, either in making statements based upon inadequate information, or in failing to make inquiries to ascertain the true boundaries of their

---

1. The Supreme Court noted at page 440 of 1 P.2d that deceit is an action "which in this and many other states may be based upon negligent as well as willful misrepresentation." The case was not referred to nor cited in Wishnick v. Frye, supra.

2. This section provides that one form of a deceit consists of "The assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true * * *." It was neither referred to nor relied upon by the District Court.

property. Fortunately for appellees, a memorandum opinion accompanies the Findings of Fact, and Conclusions of Law. Rule 52(a) provides that, "If an opinion or memorandum of decision is filed, it will be sufficient if the findings of fact and conclusions of law appear therein." In Life Savers Corp. v. Curtiss Candy Co., 7 Cir., 1950, 182 F.2d 4, the Court of Appeals held that the failure to file any findings of fact and conclusions of law did not constitute fatal error where the memorandum opinion supplied the necessary findings. If the memorandum can be used to supplant findings of fact, a fortiori it should be permitted to supplement them. The memorandum filed below rectifies the omission. The court found that representations were made entitling the appellees to recover. Actual fraud resulted from the fact that the utterances were not warranted by the appellants' information. The court states correctly that under California law the owner of real property is under a duty to inform himself of the true boundaries of the land he seeks to sell, De Bairos v. Barlin, supra; Shearer v. Cooper, 1943, 21 Cal. 2d 695, 134 P.2d 764, and held that appellants breached this duty, thus committing constructive fraud. Although the trial judge's statements are somewhat conclusionary in nature, they should be liberally construed, and in that context we feel that "they are sufficiently comprehensive and pertinent to the issues to provide a basis for decision * * *." Carr v. Yokohama Specie Bank, Ltd., 9 Cir., 200 F.2d 251, 255, (1952).

As to the sufficiency of the evidence to support the finding of actual fraud, appellants assert that the representations were based upon a map and information obtained by them from their vendor, which they believed to be true, and which establishes reasonable grounds for making the statements. They urge that they were "deceived" by their vendor, Keith Daniels, and that they "simply passed along to appellees the information which they had obtained from their vendor." In California, " 'as a general rule the owner of real estate, in the absence of facts showing the contrary, is presumed to know the boundaries and area of his land, and a buyer is warranted in relying upon his representations in respect to such facts.' " [132 Cal.App.2d 363, 282 P.2d 179] Nathanson v. Murphy, supra, and cases cited therein. See also Shearer v. Cooper, supra, where, after noting that the vendor-defendant did not know the exact location of the boundaries, the Supreme Court stated that "under the law it is a matter about which he should have informed himself before making the representation." 134 P.2d at page 768. In this regard, Mr. Stone testified that he never had a survey made of the property; that he never knew where the south boundary line was located; that he never discussed any boundary lines with anyone at any time; that he just assumed that all the improvements were on the land and he treated them as such; and that he was not too familiar with his own purchase of the property because he was in New York at the time and his wife conducted the negotiations. Mrs. Stone testified that the only information she had concerning the location of the south boundary was the map or sketch given to her by Daniels (from whom she had purchased the property) and some confirmatory statements he had made to her. There was conflicting testimony as to what the map showed. Mrs. Stone stated that it showed the improvements. Mr. Farnell said it did not. Regrettably, the map was not introduced in evidence. Assuming that the trial judge chose to accept Mr. Farnell's interpretation, it seems that the appellants based their representations on nothing more than an inadequate piece of paper. Even if we assume arguendo that Mrs. Stone's view is correct and that the map contained the improvements, we cannot say that the mere map which, according to appellants' own contention, revealed that two feet of the carport encroached on City of Los Angeles property, was a sufficient basis as a matter of law to war-

rant making the representations the court found were made.

As to the sufficiency of the evidence to support the finding of constructive fraud, it was incumbent on the Stones to know the exact location of the boundaries of the property sold. De Bairos v. Barlin, supra; Salomons v. Lumsden, 1949, 95 Cal.App.2d Supp. 924, 213 P.2d 132. Appellants concede that they took no steps other than acquiring the map to confirm the location. Yet, if we accept appellants' own interpretation of the map, that alone should have apprised them of the impelling necessity of verifying the boundaries. It is abundantly clear that appellants breached their duty of inquiry.

Appellants further contend that the vendees were not justified in relying on the representations. They assert that the vendees' own failure to discover the true state of the boundary lines precludes them from recovery. It is hornbook law in California that a vendee has "a right to rely on the vendor's representations as to acreage; that the acreage of land cannot be seen by the eye at a glance, but can only be ascertained with accuracy by scientific measurement." Shearer v. Cooper, supra. [21 Cal.2d 695, 134 P.2d 769]; Quarg v. Scher, 136 Cal. 406, 69 P. 96; Morey v. Bovee, 218 Cal. 780, 25 P.2d 2; Eichelberger v. Mills Land and Water Co., 9 Cal.App. 628; 100 P. 117. The same rule applies to footage as to acreage. Dohrman v. J. B. Roof, Inc., 108 Cal.App. 456, 291 P. 879. (90 foot lot represented as 100.) It is admitted that the Farnells made a personal examination of the property prior to purchasing it. However, as stated by the Supreme Court in Bagdasarian v. Gragnon, 31 Cal.2d 744, 192 P.2d 935, 937,

"An independent investigation or an examination of property does not preclude reliance on representations where the falsity * * * is not apparent from an inspection

* * * or [where] the party * * * is not competent to judge * * * without expert assistance."

See also Nelson v. Marks, 1954, 126 Cal.App.2d 261, 271 P.2d 900; Shearer v. Cooper, supra. Appellants assert, however, that the vendees were put on notice of suspicious circumstances and that they must be held to have knowledge of all the facts that a reasonable investigation would have uncovered. This notice came to the vendees supposedly from the map, and oral statements made by Mrs. Stone to Mrs. Farnell informing the latter that two feet of the carport encroached on City property. We have already observed that the trial court apparently rejected Mrs. Stone's version of the map contents. As to the oral notice, both Mr. and Mrs. Farnell testified to a single conversation with Mrs. Stone. Mrs. Stone testified as to just one conversation, but she said that only Mrs. Farnell was present. There is no evidence in the record disclosing whether one or two conversations took place. No one was asked the question at the trial. It seems probable from a study of the testimony that there was only one conversation, but whether one or two, it would appear that the District Court resolved that issue against the appellants.

Even granting for purposes of argument that the appellees knew of the two foot encroachment, it would not follow necessarily that they are barred from recovery. Although a party has a duty to investigate where notice of facts indicate misrepresentation, the duty is a relative one. Bank of America Nat. Trust & Savings Ass'n v. Greenbach, 1950, 98 Cal.App.2d 220, 219 P.2d 814. It is doubtful that this Court could, or should hold, as a matter of law, that notice of the two foot encroachment, openly given by the vendor, precludes the vendee from recovery, either on the theory of unjustifiable reliance or contributory negligence.[3]

3. See Shearer v. Cooper, supra, 134 P.2d at page 769, and discussion of Carpenter v. Hamilton, 1936, 18 Cal.App.2d 69, 62 P.2d 1397, and the "on guard theory," with cases cited.

Turning to the question of damages, it is not disputed that the proper measure of damages in a fraud action involving the sale of real property is the difference between the value actually paid for the property and the value actually received. California Civil Code, § 3343; Bagdasarian v. Gragnon, supra. This is the out-of-pocket loss rule. Appellants contend that the trial court failed to consider one important item in computing the value received, to wit, the household furniture. They also assert that there is no finding of fact of a vital figure in the computation, namely, the value actually received. On both these points appellants rest heavily on the Bagdasarian case, supra. There the Supreme Court reversed a judgment for the plaintiff solely on the question of damages. It was conceded that the trial court had disregarded the value of some farm equipment in computing the total value received. The Supreme Court held that this item should have been considered. Furthermore, there was disagreement as to the worth of the equipment, one witness testifying that it was worth $2,404.75, while another appraised its value at $7,000. Hence, the Supreme Court felt compelled to reverse the judgment and remand the case to determine the true value of the equipment and to have that figure included in the computation of the value received.

In the case at bar, the only evidence as to the value of the personal property was the testimony of a qualified appraiser, who assessed its worth at $2,500. This valuation was uncontroverted. The record is not at all clear that the trial court did not consider and include the household furniture in its computation of damages. The rule is well fixed that the findings of the court are presumptively correct. Anderson v. Federal Cartridge Corp., 8 Cir., 1946, 156 F.2d 681, 684. A corollary of this rule is that it will be presumed in the absence of a showing to the contrary that all proper items were considered in the computation of damages. Unlike the Bag-dasarian case, supra, the record does not disclose that the personal property was disregarded. The presumption that it was considered is fortified by an analysis of the evidence. The appraiser valued the present worth of the property at $10,600, whereas Mr. Stone estimated its worth as being $25,000. Both were silent as to whether their valuations took account of the personal property. The evidence would have been legally sufficient to have supported a finding that appellees were damaged in the sum of $27,400, or $24,900, if we assume that the appraiser ignored the personal property. The court was not required to find the value of the property to be that stated by either witness. Employees' Participating Ass'n v. Pine, 1949, 91 Cal.App.2d 299, 302, 204 P.2d 965. The inclusion of the personal property would not and did not take the damages awarded outside the allowable limits of the evidence before the trial court.

The only finding made by the trial court in respect to the total value received is that the value was not $38,000. The appellants characterize this as a negative pregnant. However, it appears that the court made this finding not for the purpose of determining the value received, but rather to show that a misrepresentation had been made as to value. We are constrained to regard the Findings of Fact as totally lacking a finding as to this vital element in the computation of damages. The memorandum opinion gives us no assistance here. The question is squarely posed as to whether the absence of a finding of the value received requires this Court to reverse the judgment on the issue of damages alone.

Appellees adopt a mathematical approach to the problem, reasoning that given the minuend of $38,000, the value paid, and the difference between that amount and the subtrahend, which is $15,000, it is only a matter of simple subtraction to determine the value of the property received as $23,000. They contend that this case meets the criteria laid down by this Court in Carr v. Yoko-

hama Specie Bank, Ltd., supra, wherein it was stated, 200 F.2d at page 255,

> "The ultimate test as to the adequacy of findings will always be whether they are sufficiently comprehensive and pertinent to the issues to provide a basis for decision and whether they are supported by the evidence."

Cf. Weber v. McKee, 5 Cir., 1954, 215 F.2d 447. On this issue, Hurwitz v. Hurwitz, 1943, 78 U.S.App.D.C. 66, 136 F.2d 796, 799, is germane. That case was an equity suit and findings of fact were required. Although certain findings were not made, the Court of Appeals affirmed the judgment for the plaintiff, stating that

> "In cases where the record is so clear that the court does not need the aid of findings it may waive such a defect on the ground that the error is not substantial in the particular case."

In Huszar v. Cincinnati Chemical Works, Inc., 6 Cir., 1949, 172 F.2d 6, 8, a declaratory judgment suit for patent infringement, the Court of Appeals, in affirming the judgment for plaintiff, said

> "We were, at the outset, somewhat concerned about the failure of the district judge to make separate and detailed findings of fact. It would have been better to have done so and our study of the record would have been simplified had we had such findings. An examination of the decree, however, discloses findings of ulti-mate facts which, upon careful consideration of the record, obviously adjudicates the controlling issues * * * We think, in view of Rule 52 of the Federal Rules of Civil Procedure, 28 U.S.C.A., that we are justified in considering the appeal without remanding the case for more specific findings and so to save delay in adjudication."

Those views ably reflect our sentiments. The record is clear. The instant case is distinguishable from Bagdasarian v. Gragnon, supra, in that there is no certain omitted item of disputed value herein. The sole effect of remanding this case would be to consume time and money. It would be an idle ritual to send the case back to the District Court to have it perform the perfunctory task of stating the value received if our basic premise that the court considered the value of the personal property is correct, as we believe it to be. This does not mean that we condone the practice of omitting the determination of material issues from the findings of fact. We do not. Indeed, we deem it appropriate to stress the desirability of having specific Findings of Fact and Conclusions of Law entered in the record on all material issues so that the processes of appellate review can be facilitated.

Appellants concede that if the Farnells prevail in this appeal, the counterclaim is barred.

For the reasons herein set forth, the judgment of the District Court is

Affirmed